Good morning, Your Honors. Good morning. May it please the Court, my name is William Um, and I represent the appellant here, Yahoo! Inc. I'd like to reserve four minutes for rebuttal. Keep your eye on the clock, we'll try to help you. Great, thank you. So, we are here on the trial court's grant of National Union's motion to dismiss Yahoo's complaint. So, I would like to focus on the main allegation in the complaint that is at issue here. And that's found at ER 23 and 24. Specifically, it's the allegation by Yahoo! that Yahoo! specifically sought to expand the personal injury coverage provided by the National Union policies through a separately drafted manuscript endorsement. Because that's the essential allegation of the complaint that's at issue, I want to walk the Court a little bit through the intricacies of what this particular policy is, because it may be a little bit nuanced. Two policies, right? We have five policies here, but there is... Different versions. So, that's what I was going to walk you through. Okay. And if you can just indulge me a little bit on how this works. So, what typically happens, and this is not an exception, is you start with a foreign policy, an ISO policy that National Union puts out. And that's what the starting point was. So, the starting point for it covered personal and advertising injury collectively, and there were seven enumerated offenses that were identified. Yahoo! was not satisfied with that. Yahoo! said, I want to separate out personal injury coverage, and I want to separate out advertising injury coverage, because those are two separate kinds of coverages, and Yahoo! wanted specifically for personal injury. So, Yahoo! negotiated with National Union, and the manuscript came out. And the manuscript can be found at page 100-103, ER 100-103. And by doing this, what you did was you basically took away the conduct-oriented offenses, put them under personal injury, and you took the content-oriented offenses and put them under advertising injury, which are two separate coverages. And what we're focusing on here is the personal injury coverage on the right publication of material in any manner that violates a person's right of privacy. And the reason why that's very important here is, going back to the Court's original question, is the foreign policy had an express exclusion in the policy that said there will be no coverage under the personal and advertising injury for violation of statutes or cases that allege a violation of statute, including the TCPA, expressly stating the TCPA statute, that's at issue here. So, put yourself in that situation and what Yahoo! is alleging. Yahoo! is saying, we want separate line of coverage on personal injury. We see this TCPA exclusion in the foreign policy. We want that out. So, when you fast forward and you look at the manuscript policy that's out there, Yahoo! got exactly what it wanted, which is coverage for personal injury and for complaints that allege the violation of privacy rights. And, just to be clear, the TCPA exclusion is now no longer available. So, that's the context in which this policy... Should we treat the 2008 policy differently than the other four policies? I believe you're going to hear from the National Union, but they're essentially going to be the same because they all have the same endorsement, the manuscript endorsement that we're talking about in each of the five policies at issue. And that's the endorsement that Yahoo! negotiated to obtain. Correct. That you believe covers personal injury and the TCPA coverage. Correct, Your Honor. And, again, the reason why this is important, we are here based upon the dismissal of Yahoo's complaint as a matter of... by the trial court. And our standard was to be able to allege, plausibly allege, that there could be a duty to defend on the policy, which is a potentiality standard. So, what we're contending here is that the trial court failed to consider the details of the policy and, instead, relied upon the sort of the standard form policy language that's out there and, in the process, lumped in cases that interpret the advertising injury provisions, which is not at issue here. Let me ask you this, Counsel. Taking all that you said as being accurate, it does appear that California law may be a little unclear about this issue. Do you agree with that? I would agree with that, Your Honor. So, if you were in our situation, do you think this is something that ought to be certified to the California Supreme Court? Since this is in the era in which we presently live, obviously something is going to become increasingly important. So, I would say yes, Your Honor. But I also, just to give you at least some comfort, is that I also believe that there are sufficient authorities in terms of policy interpretation that's already provided guidance from the California Supreme Court on how you read the policies that you could find in our favor in this particular situation without certifying the issue. What about JT's frames, which appears to have fairly similar language to the coverage provision here? Can you distinguish that case? Sure, I definitely can. So, a couple of points, Your Honor. First of all, what's important with JT frames, and the concept in JT frames of policy interpretation that the context is important, Yahoo! doesn't disagree with. But keep in mind the context that's at issue there. The context there was solely in the connection with advertising injury coverage, and the advertising injury coverage all involved publication of material, libel, slander. These were all sort of content-based offenses that were identified, and there were four of them. And we don't disagree with that in terms of what that was, because those are the four content-oriented offenses that are in Yahoo! separately covered advertising injury. What JT frames don't have, doesn't have, is it doesn't have anything about the conduct-oriented offenses, wrongful entry, trespass, nuisance, wrongful eviction. Those are the context-oriented personal injury offenses that are at issue in the manuscript policy that Yahoo! has secured. And Yahoo! is not seeking coverage, again, under advertising injury, but going under the personal injury violation of a person's right of privacy arm of the coverage. JT frames is also distinguishable on this basis. You can make the argument that JT's frames and ACS, which is another appellate court authority that the National Union relies upon, actually could potentially be in conflict. So you have potentially two appellate decisions that are in conflict, even if they came out on the right on the same side. And that is this. ACS involved policy language that didn't have publication. It had the language making known, which is obviously very different than publication. Making known makes it clear that you're revealing something to somebody else as opposed to affecting the right of a person's seclusion privacy right. Well, in ACS, in doing so, the court actually distinguished cases that used the word publication and said, we're different than publication. We're making known. Well, JT frames did not critically evaluate that and made a leap of faith, ignore that sort of policy distinction that was done, even though it had the publication language, and automatically equated making known with publication. So for that reason alone right there, you've got potentially two appellate court decisions that are in conflict that came out, albeit in the same manner. You know, I've seen this question before, and not to make you unhappy, but I always thought this sentence should be read narrowly. But Supreme Courts, state Supreme Courts all over the country are telling me I'm wrong. What do we do with state Supreme Court jurisprudence that isn't California? I mean, obviously you want it, but how does it fit into the way California does things? Well, first of all, I think if you look at the courts and the highest courts that have interpreted this issue, and there's four of them out there that have done it. In fact, one of them, the one in Florida, the Penzer decision, that came through a certification by the 11th Circuit. So clearly federal appellate court. I don't think it's any surprise that I was on that panel that was confused and asked for it to be certified. Sure, Your Honors. And I think that the reason for it is you have to kind of. . . You think Judge Rustani was confused? No. With all due respect, no, not at all. I am suggesting that these are challenging issues that are. . . Well, I guess I'm still back to my question. What does California do with Supreme Court cases from other states? So I think in this situation, I'm actually surprised that California is actually in the minority because usually California is usually ahead and kind of set the standard for other courts to look to. And here I would clearly say that California should look to the other courts, and given the opportunity, I believe that the California Supreme Court will understand the logic associated with it and follow those highest courts. And secondly, there's no highest court of any other state who has ruled the other way to hold that this excludes the right that a right of privacy is limited solely to a secrecy right as opposed to a seclusion right. So again, I believe that there is sufficient California Supreme Court authority for this court to be able to predict what it's going to do. But if it's still continuing to struggle, which I completely understand, this is an appropriate case to be certified for the Supreme Court to finally resolve for a number of reasons, that there is potential conflict among the appellate courts that have really not resolved the issue, and the fact that there are conflicts around all the other states but predominantly leading toward finding coverage in this area. And the interpretation here that Yahoo is arguing for would be consistent with sort of the policy interpretation that the California Supreme Court has laid out. Okay. You want to say a few more minutes, right? I do, Your Honor. Great. Thank you. Very well. Okay. National Union. I'll bet you disagree with him. Your Honor, just a little bit. Good morning, Your Honors. Daniel Graham for Appellee National Union. May it please the Court. Frankly, we're a little surprised at the opening of Appellant's argument, basically taking the opportunity to try to supplement the allegations of the complaint, talking about what the intentions were, what Yahoo wanted to accomplish. What you have are the allegations of the complaint, Your Honors. And in the complaint, the complaint for declaratory judgment, it's very clear. Yahoo alleges that there was a duty to defend Yahoo in these TCPA lawsuits under the oral or written publication of material, oral or written publication in any manner, of material that violates a person's right of privacy. There was no duty to defend under that offense, Your Honors. And respectfully, California law is very clear. It has a developed body of law on whether this privacy offense extends to TCPA claims. There have been two courts that have addressed the issue in the context of TCPA lawsuits. And in both instances, Your Honor, the courts found that there is no coverage for TCPA claims. There is no duty to defend. You know, the way I actually understood what he was saying, that is, we're talking about coverage here, not exclusions. Isn't that really what he was saying? Well, I think as far as trying to explain the back story about what the intentions were and why Yahoo negotiated this or that, I think what you are left with ultimately is the policy language. And the policy language is language that courts have construed in other instances. It's not unusual. Sorry. Go ahead, Justice O'Connor. If it's coverage and there's an ambiguity, you lose, right? If there is an ambiguity, Your Honor, that would be correct. However, there is no ambiguity here. And that's why this is very different under California law. You would ask, Your Honor? I'm not sure that I agree with you that the plain language on publication isn't ambiguous, but we look to California law for guidance on that. And my problem with your argument is that while JT's frames appear favorable, ACS systems, it came out with the bottom line result favors national union, but the discussion really distinguished between the language at issue in ACS systems, which is making known, and it distinguished it from language like oral written publication. And that suggests to me that the ACS court would have gone a different way had it had the same language as in JT's frames. At the end of the day, I'm not sure what we're going to do with that, given that our task here is to interpret what the California courts would do and not come up with our own solutions. Your Honor, as far as applying the analysis in the context of this policy language, ACS and JT's frames are in accord. California law does not just take terms in the abstract, as other jurisdictions do, and this is the case law that Yahoo cites. There are other jurisdictions that just take a look at the offense in the abstract and they pull the terms out and they say, well, what does publication mean? And what does material mean? That's not what California courts do. That's not what California law requires. But, counsel, with respect, both ACS systems and JT frames involve different policy language than we're talking about, right? No, Your Honor. JT's frames is actually very much on all fours with the language that is addressed in this particular endorsement. Do you think it's just one and the same, there's no ambiguity? I do, Your Honor. This one is opposed to the JT frames. Absolutely, and I'll explain why, Your Honor. As far as JT's frames is concerned, that is a case where the court construed that, well, first of all, it pointed out you can't just look at the offense in the abstract. You've got to go ahead and take a look at the offense, but you've got to apply it in the context of the policy language. And so, analytically, what JT's frames did was they took a look at the offense, oral or written publication of material that violates a person's right of privacy, and the court looked at that and said, okay, we apply the last antecedent rule, and when we look at this offense, we see that it is monitoring or modifying the material. The material must violate a person's right of privacy. And then the court says, linguistically, that's right within the language of the offense, but moreover, that construction is supported by the context of the policy language as well. And what the JT's frames court notes is that there's another offense that provides coverage for oral or written publication of material that liables or slanders a person or organization or disparages the goods, products, or services of a person or organization. And so what the court says is when you look at it in context as you're supposed to do under California law, you see that we are dealing with something that is content-based in nature. And that's important because the other jurisdictions say we're not going to consider context and we're not going to consider the other offenses that are involved in the definition. As far as the making known and whether that is truly different, if you look at the ACS decision and you look at the JT's frames decision, in both cases the courts are engaging in precisely the same type of analytical framework. And that's the type of framework that the California Supreme Court and Bank of the West said is appropriate. If you're just looking at the definitions in the abstract, that's defective. You have to go beyond that. The California Court of Appeal looked at making known and it said, from its perspective, there's no real difference between that and publication. And so we have a California Court of Appeal making a pronouncement of California law on that particular issue. Now, Your Honor, you asked, is this language different? It's not. Admittedly, we're dealing with a personal injury endorsement. And Yahoo has argued, well, there are other offenses out there that are conduct-based. And therefore, JT's frames is distinguishable and ACS doesn't speak to the issue. But that's not correct, Your Honor, because even if you look with the offense and you apply the rules of construction under California law, the offense standing alone is content-based, but also it's context. It follows an offense that pertains to libel, slander, disparagement. And that's important because, again, under California law, the context helps determine the meaning. And so one phrase, oral or written publication of material that violates a person's right of privacy, when you're talking about that prefatory language, you can't give it a different meaning under a libel, slander, disparagement offense as respects a privacy offense. There's MirPAD. The California Court of Appeal says it's important to try to have consistency in the way the language is interpreted. Kennedy. In other words, based on your interpretation, when these State Court of Appeals refer to something in the context of libel, slander, and disparagement, as long as it's in the same context, it's treated the same way. I think the prefatory language is, indeed, Your Honor, the prefatory language is talking about the type of offense that we're dealing with there. And that informs the reasonable reader of the policy language. And that's exactly J.T. Frames Court's decision, and also the district court in this case, that you've got to look at it in context, and that helps. One policy provision helps inform the other policy provision. You obviously heard what opposing counsel said about the negotiations that took place and so on, and I realize it ultimately gets down to language. Indeed. And the district court looked at the language. Is there anything in the language that was negotiated that you think is a little ambiguous in light of what we're dealing with here? No, Your Honor, because ultimately when you look at the policy language, you are left with that offense, the oral or written publication of material that violates a person's right of privacy. Very similar to the same offense that was addressed in J.T.'s frames and ACS. And courts like Integral, the federal court, applies California law on the issue, and it looks at this offense and it says it applies to secrecy violations based on content-based wrongs versus seclusion. And so I think from the court's perspective, Your Honor, you have that language. And to try to inject some type of ambiguity, it's just not there. The language says what it says. And the other thing, too, Your Honor, is when you're talking about something like, well, we thought it was going to mean this and we thought it was going to mean that, I mean, those type of assertions have to yield to the factual record. In that case, ultimately what you're left with is the policy language. Ultimately that's what we're left with in any insurance contract. Indeed. Indeed, Your Honors. But in this case what's different than in other circumstances is there are courts that have looked at this that said it's not ambiguous when you apply the California rules of construction. And that was something that the district court specifically observed. The district court was aware of other law and how courts have applied that particular issue in other states' jurisdictions. J.T.'s frames was likewise aware that other courts looked at the analysis differently. It referenced that specifically in footnote 16 of its decision. So J.T.'s frames is making its assessment and it's doing it in the context of other opinions. And it's aware that it's going to take a different approach because under California law, you can't just look at the policy language in the abstract. You have to apply context. Is there a case or cases or other cases that you think present a problem for your perspective in terms of the construction of the language we have under advisement here? I think, Your Honors, if you look to courts that apply the contextual analysis like California, and we mentioned them in our briefs, the WebSolve decision, and you look at J.T.'s frames, you look at it in the context of Bank of the West where the court is saying, this is how the analysis is going to be undertaken. I don't think there is a problem. I think the reason you can look at the language the way you do is because there is so much information. Even in that endorsement, it's not enough to say, well, some of it's conduct-based and some of it's content-based. I think even in this instance where you're dealing with two offenses, I think it's very telling that the language of those offenses is identical. And I think it's telling that the very first offense is talking about liable slander or disparagement because that informs the other offense as well, Your Honor. What's your view on certification to the California Supreme Court? Let them have an opportunity to answer this question of state law. Well, Your Honor, I guess my response would be this. As far as the body of case law is concerned addressing this issue, these decisions, JT.'s frames and ACS, have been around for 10 years. The California Supreme Court had the opportunity to review those decisions and it declined to do so. I think that's telling, and as this Court has recognized, it's telling when a California Supreme Court declines review of lower court decisions. And this Court has also recognized that the California Court of Appeal may very well reflect the law of the state, as it does in this case, we would contend. I just want to be sure I understood your point correctly. You're saying that JT. frames and ACS were both, they tried to appeal those to the California Supreme Court. Correct. And they denied hearing. The review is denied. That's correct. And so that's significant because under the Ninth Circuit, the Ninth Circuit endeavors to apply the law of the state. And it is not going to just easily dismiss the law of an appellate court in favor of what the Ninth Circuit on its own thinks it should do. It's going to go ahead and it's going to enforce the law and recognize the law. In this case, ACS and JT.'s frames have been the pronouncement on California law on the scope of the privacy offense in the context of the TCPA claims, and there's no coverage for it. There's no reason to upset that. And yet if this Court has any hesitation about the significance of ACS and JT.'s frames, the National Union would say it would agree with certification to the extent this Court has hesitancy. Is there any case law or rule of the California Supreme Court or issued by the California Supreme Court that would clarify the meaning of their denying a rehearing or a hearing on a case like, say, JT.'s frames? That would be something I would have to present, Your Honor. I'm not in a position to. What I'm looking for is, I mean, obviously with the U.S. Supreme Court, which our Court is far more familiar, you know, if somebody files a petition for a writ of certiorari, the record is all there. They don't have four votes. It's not granted. They say they denied it. Sometimes they comment. Sometimes they don't. But by and large, there could be any number of reasons why they don't take it. I wondered if there's anything, any comparable jurisprudence with respect to the California Supreme Court that would enlighten us about the role of these two cases, ACS and JT. frames, in terms of how much they represent the thinking, if you will, of the California Supreme Court? Well, Your Honors, it would be difficult to answer that particular question, other than the Court has denied the opportunity to hear it. And the pronouncement of the California law on this particular issue in the scope of the privacy offense hasn't been challenged in ten years. Now it's a situation where it's an opportunity to revisit the issue. This is a settled area of law, Your Honor. The privacy offense does not encompass TCPA. Privacy, though, I think you would admit, is an area that is expanding massively because of the nature of technology increases. You've read about public hearings about some very large technology companies that have been accused of one way or another with respect to privacy. Should that have any bearing on whether we send this to the California Supreme Court in the sense that this is going to be a subject of great importance in the future? Your Honor, I think the privacy issue is a significant consideration. But when you're talking about coverage for a particular claim, you start with the policy language. So even if there are developments in privacy law in the abstract, that doesn't necessarily change the analysis, and that's why it's our position JT's frames and ACS is still instructive, irrespective of what happens. I agree the language is critical, but you look at the due process in the 14th Amendment, and I would dare say that the meaning of that language has changed substantially since its enactment. Privacy in general, Your Honor? No, no, I'm talking about due process in the 14th Amendment. That's just words, but the meaning has changed. So I'm just saying words can change, even though they're in the policy. Words can change, Your Honor, but in this case, we have two courts that are construing exactly what the scope of the offense is and respectfully, it is a settled issue. It's been an issue for 10 years. Okay. Other questions by my colleague? I think we're set. Thank you very much. Thank you, Your Honors. So we'll hear now from Yahoo. You've got a few minutes of rebuttal. Thank you, Your Honors. So I want to address this. I think to a large degree we're in agreement in terms of the policy interpretation. The first one here is, again, we started with the complaint that Yahoo specifically alleged that it had an expanded definition. But I completely agree with National Union's counsel that you have to look at the policy language. So what we've done is to support and show you in the record that the policy actually is consistent with Yahoo's allegation that the definition has been expanded. And we showed you that by showing you what the form was that originally started and where we ended up in terms of making the move to eliminate the TCPA exclusion. Counsel, as you know, your opposing counsel suggests that all of that may be true, but it's not alleged in the complaint, and therefore it's really not important to our analysis. What's your response to that? Oh, I would completely disagree with that. Okay. By the specific allegation in the complaint. Okay. What were you referring to in the complaint that you think is contrary to what your opposing counsel said? Sure. So starting at paragraph 24, which is at ER 23, and I'll read it. Significantly for purposes of this lawsuit, Yahoo specifically sought to, and it goes on to the next page, expand the personal injury coverage provided by the National Union policies through a separately drafted manuscript endorsement. And the reason why that's important is, again, that is a general that takes you to the policy, and the roadmap that I showed you is the policy where you went from the form and ended up where it did. And I want to show you something that creates some potential conflict here. So JT Frames we talked about had similar language in the oral and written publication material that violates a person's right of privacy. I would agree with that. But if you look at the case, there are four enumerated offenses that it covers. First is oral written publication material that slanders or libels. Second is oral written publication material that violates a person's right of privacy. Third is misappropriation of advertising ideas. And the fourth is infringement of copyright. There is no conduct-based offenses in there in JT Frames. You don't have trespass. You don't have wrongful eviction. You don't have the conduct-oriented offenses that are at issue in Yahoo's policy. So I agree with the concept of you need to look at policy language in the proper context of where it is, but you have to look at the context of the personal injury coverage. And let me just point out to one distinction that potentially creates problems here to National Union's argument. So I talked about the fact that personal injury and advertising injury are separate. So let me read you two offenses, one in each, and tell you if you can tell me the difference between the two. So in the personal injury section, there is a offense, the one that's here, that says oral or written publication in any manner, a material that violates a person's right of privacy. That's under personal injury. The same or similar offense in advertising injury, which we're not seeking coverage for, is oral or written publication in any manner of material in your advertisement that violates a person's right of privacy. So now you've got two pretty much identical offenses, one in advertising, one in personal injury. And the one in advertising makes it very clear. It says in your advertisement, which is, again, if you read in the proper context of the other offenses there, public, disclosed to a third party, probably more appropriate for a secrecy type of right of privacy. Along the lines in the personal injury, you're talking about offenses, false arrests, malicious prosecution, wrongful eviction. And then you conclude with oral or written publication of material that violates a person's right of privacy. So I think we have your argument. May I ask either of my colleagues to have additional questions? No. We thank you both. Your argument has been helpful. We thank you very much. And we will give you a decision in due course.  Thank you, Your Honors. Thank you. Or as they used to say, with all deliberate speed. Thank you. Okay. We're now going to hear the argument in the last case.
judges: M. Smith, Nguyen, Restani